## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

THOMAS BONDS,                )
                             )
         PLAINTIFF,          )
                             )          Civil Action No.:
V.                           )          _____
                             )
FULTON COUNTY SCHOOL         )
DISTRICT,                    )          **JURY TRIAL DEMANDED**
                             )
         DEFENDANT.          )
                             )

## COMPLAINT

COMES NOW Thomas Bonds ("Plaintiff") by and through his undersigned counsel, files COMPLAINT against Defendant Fulton County School District ("Defendant"), showing the Court as follows:

## NATURE AND PURPOSE

1.    Plaintiff brings this action to obtain full and complete relief and to redress the unlawful employment practices described herein.

2.    This lawsuit is brought for unlawful retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C § 2000e *et seq.* ("Title VII") and the Georgia Whistleblower Protection Act, O.C.G.A. § 45-1-4.

1

## PARTIES

3.     Plaintiff Thomas Bonds is a male citizen of the United States of America and submits himself to the jurisdiction of the Court.

4.     Defendant is a public corporate body with the capacity to sue and be sued organized under Georgia law and is a local governmental entity providing public services within the boundaries of the Atlanta Division of the Northern District of Georgia.  Defendant may be served by personal service on its Superintendent, Dr. Jeff Rose, at 6201 Powers Ferry Road Northwest, Atlanta, Georgia 30339.

5.     The right of action provided for in the Georgia Whistleblower Act, O.C.G.A. § 45-1-4, is a waiver of the City's sovereign immunity.  *See Pattee v. Ga. Ports Auth.,* 477 F.Supp.2d 1253, 1269 (S.D. Ga. 2006).

6.     At all times relevant to this action, Plaintiff was a "public employee" for purposes of the Georgia Whistleblower Protection Act, O.C.G.A. § 45-1-4.

7.     Defendant receives funds from the State of Georgia and is a "public employer" as defined in O.C.G.A. § 45-1-4.

8.     Defendant is a covered employer under Title VII.

## JURISDICTION AND VENUE

9.     This Court has federal question jurisdiction over Plaintiff's Title VII claims pursuant to 28 U.S.C. §§ 1331 and 1343.  This Court has supplemental

jurisdiction over Plaintiff's Georgia Whistleblower Protection Act claim pursuant to 28 U.S.C § 1367(a) because that claim is so related to the federal claim in this action that it forms part of the same case or controversy.

10.    Pursuant to 28 U.S.C. § 1391(b), 42 U.S.C § 2000e-5(f)(3) and Local Rule 3.1(B)(3), venue is proper because the unlawful employment practices giving rise to the Plaintiff's claims occurred in this judicial district and division.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11.    Plaintiff has satisfied all administrative prerequisites for bringing his Title VII claim in this Court.

12.    Plaintiff timely filed a Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC").

13.    Plaintiff received a Notice of Right to Sue from the EEOC less than ninety (90) days prior to the filing of this Complaint.

## FACTUAL ALLEGATIONS

14.    Plaintiff, an African American male, was hired by Tri-Cities High School in 2011.  Plaintiff was promoted to the position of Assistant Principal of Tri-Cities High School in January 2016.

15.    During Plaintiff's employment with Defendant, he was a valued employee that received strong performance reviews.

16.     Plaintiff has a daughter in the Fulton County School System.

17.     As a result, during Plaintiff's tenure as Assistant Principal he took concerns regarding student abuse seriously and was aggressive in pursuing such conduct.

18.     Unfortunately, despite Plaintiff's attempts to aggressively pursue student abuse by teachers and administrators, Plaintiff's attempts were unsuccessful and fell on deaf ears.

19.     By way of example, in 2018, Plaintiff began to observe aggressive and inappropriate behavior by Alex Demond, a Communities in Schools ("CIS") Representative (CIS is an independent nonprofit organization focused on school success and dropout prevention).

20.     Plaintiff began to document Demond's infractions but his requests for support went unanswered.

21.     On one occasion, Demond made a gesture about a female student's chest size.  On another occasion, Demond slammed a female staff member to the ground.  Plaintiff informed leadership of both incidents, with the latter being recorded and played back on security camera.  However, despite Plaintiff reporting this egregious conduct, Demond was allowed to work on the school's campus.

22.     The following year, Plaintiff was removed as Demond's supervisor and Demond began reporting to Kimberly Whitfield, Assistant Principal.

23.     In 2019 security camera footage surfaced of Demond shoving a student down the hall.  The student was attempting to go to the restroom.  Demond pushed and shoved the student for several minutes (he pushed the student approximately thirty (30) feet).  Despite this camera footage surfacing, school leadership refused to terminate his relationship with the school system and continued to allow him to work on the school's campus.

24.     Given the egregious nature of these violations, and the fact that Plaintiff was worried that yet another incident of student abuse might occur, Plaintiff made an anonymous call to Human Resources regarding Demond's abuse of students. Following that anonymous complaint, executive leadership made the decision to terminate Demond's relationship with the school system.  Plaintiff was in a meeting with the principal when the phone call came to dismiss Demond and the comment from executive leadership was, "how would this look for Fulton County Schools if the public saw the video footage?"

25.     In February 2019, Plaintiff gave a letter of reprimand to a teacher, Shenita Granberry, for yelling to several teenage girls, "I like penis!!" in protest to their homosexuality.

26.    Plaintiff reported this incident to the principal, however, no Employee Abuse Kit was completed as required.  Per Fulton County School District policy, an Employee Abuse Kit should have been completed for this incident.

27.    An Employee Abuse Kit is a series of mandatory forms that administrators must complete anytime there is an allegation of student or employee abuse.  Administrators have 48 hours to complete the forms or face reprimand. The completed forms are then sent to Human Resources, Division of Family and Children Services, the Area Superintendent, and Fulton County Investigations. Once the forms are completed, the school completes a mandatory investigation.  The State will then determine if it believes an investigation is warranted based on the submission.

28.    The Fulton County Child Abuse Reporting form states as follows, "All known or suspected child abuse (i.e. physical abuse, emotional abuse, neglect, maltreatment, sexual abuse and exploitation) must be reported **immediately, not more than 24 hours after suspected abuse.** *Georgia law O.C.G.A. § 19-7-5, states that any person who is required by law to report a suspected case of child abuse and who knowingly and willfully fails to do so shall be guilty of a misdemeanor.*" (emphasis in original).

29.     In April 2019, a student came to Plaintiff crying and stating that he was denied the ability to attend lunch on April 24, 2019 by a teacher, Carmena Lawson. Plaintiff conducted an investigation and determined that Ms. Lawson was denying her students the ability to attend and eat lunch as a behavioral tool.   Plaintiff gave Ms. Lawson a written reprimand and also reported the issue to Human Resources.

30.     In May 2019, Ms. Granberry got into a verbal altercation with a student which resulted in her calling the student a "bitch."  Plaintiff gave Ms. Granberry a written reprimand.

31.     In December 2019, Plaintiff issued Ms. Granberry another written reprimand for failing to call for help or request assistance when a parent made threats that implied violence against a child and for leaving students unmonitored.  Ms. Granberry had previously been issued a Corrective Action for arriving late to work and leaving students unmonitored.

32.     In February 2020, during a verbal altercation between a student and Kenneth Miller, Athletic Director, Coach Miller called a student a "bitch ass nigger" as the student was walking away from him.  The student reported the statement to Plaintiff who in turn reported the issue to Principal Shateena Love.

33.     Plaintiff not only reported student abuse to leadership but, beginning in March 2017 and continuing through the end of Plaintiff's employment, Plaintiff

complained to various individuals, including Human Resources, regarding ongoing sexual harassment by Ms. Whitfield.

34.     Specifically, Ms. Whitfield made sexual comments to Plaintiff including, but not limited to, requesting hugs and off-campus lunch dates, referred to Plaintiff as her "work husband", and made comments asking about his wife and how close they were, stating "we are all human, have you thought about doing things" implying that he should cheat on his wife, stating "monogamy is not natural," and also "an affair with you would be perfect because we both have too much to lose and we wouldn't want to mess up our careers."

35.     Ms. Whitfield would also send Plaintiff Valentine's Day cards, would call him late and night, and would call him 10-15 times within a 20-30 minute period.

36.     When Plaintiff did not give into Ms. Whitfield's sexual advances, she began to retaliate against him including making baseless complaints to the principal, yelling at him, harassing him, and stalking him.

37.     Plaintiff complained various times to Human Resources and his leadership regarding Ms. Whitfield's behavior, including the sexual harassment, but was told "we don't deal with that mess."

38.     In May 2020, another incident occurred involving Coach Miller. Specifically, Plaintiff was in a meeting with Principal Love and heard Coach Miller

over the intercom requesting that a custodian report to the Physical Education office. Principal Love and Plaintiff could hear panic in Coach Miller's voice so they went to the Physical Education office and saw that the office floor was covered in blood. There was also an ambulance outside. Plaintiff questioned why Coach Miller would call an ambulance but would not call his leadership. Principal Love and Plaintiff ran outside and saw a parent rolling around on the ground crying and screaming and yelling "Nooooo" and "Why God?!" Plaintiff ran to the ambulance and saw a student inside the ambulance. Plaintiff asked what happened and the ambulance medic held up a plastic bag with part of the student's finger over ice. Plaintiff asked Coach Miller what happened and he said that the student got his finger caught in the weight while performing a move called deadlifting. However, Plaintiff questioned Coach Miller on how that could have happened to the student's finger as that particular move does not involve the student's finger being anywhere near the weight. Plaintiff told Miller he needed to know what actually happened. Coach Miller responded, "that's my story." Additionally, the student refused to tell Principal Love or Plaintiff what happened. Plaintiff requested that Coach Miller prepare a written statement regarding the incident, however, he never did.

39. Upon information and belief, Coach Miller and the student were involved in a physical altercation which is what caused the injury.

40.    In November 2020, Dr. Ethel Lett was named as the new Principal of Tri-Cities High School.

41.    Dr. Lett had previously served as the Curriculum Assistant Principal of Tri-Cities High School but was removed from the High School due to performance issues.

42.    In November 2020, Dr. Lett met with Coach Miller.  During that meeting, Coach Miller expressed to Dr. Lett that Plaintiff was constantly raising issues regarding student abuse and was quick to report teachers and administrators for inappropriate conduct.  Dr. Lett told Coach Miller that she would try to terminate Plaintiff's employment as she could not have someone reporting to her that would raise complaints about teachers and administrators to leadership outside the building.

43.    Coach Miller told Tiffany Mingo, Director of Drama, about his conversation with Dr. Lett.  Ms. Mingo in turn told Plaintiff about the conversation and told Plaintiff that he should be cautious and careful because his job was on the line.

44.    In fact, soon after Dr. Lett became Principal, Dr. Lett called Plaintiff into a meeting and asked him about the written reprimands he gave to Ms. Granberry prior to her becoming principal.

45.     Dr. Lett also sent Plaintiff an email stating that all complaints must go to her directly and that he needed to stay within her bounds.

46.     In other words, Dr. Lett made it very clear to Plaintiff that she was not okay with Plaintiff's complaints and that she wanted to keep him quiet.

47.     On December 7, 2020—17 days into Dr. Lett's new position as Principal—Dr. Lett issues Plaintiff a disciplinary action for calling to check on employees that were sick, something he had done for five years without incident.

48.     In January 2021, Dr. Lett called Plaintiff into her office and yelled at him for writing up a teacher, James Banks, for leaving two hours early.  Dr. Lett told Plaintiff that he used to babysit for her years ago when she would bring her son to school.  Dr. Lett further stated that she was aware of Plaintiff's prior reprimands to Mr. Banks.

49.     On or about January 29, 2021, in Plaintiff's LKES/TKES pre-conference, a meeting that takes place prior to an administrator receiving a performance review, Dr. Lett wrote that one of Plaintiff's opportunities included, "[c]omplaints→[s]aying no more."

50.     Additionally, on Plaintiff's mid-year conference review, Dr. Lett wrote that Plaintiff needed to have a "clear understanding of the principal's mission and navigate within those confines."

51.   The review scores on the mid-year performance review were significantly lower than Plaintiff had received under prior principals.

52.   On April 1, 2021, Plaintiff submitted a statement to Dr. Lett regarding Coach Miller cussing and degrading Conchetta Stidwell, a Campus Security Associate, in front of students.  According to the statement, Ms. Stidwell stated that when Coach Miller began yelling at her, she attempted to walk away, and he continued to yell that he is the boss and began following her while shouting and making physical gestures.  Coach Miller yelled "fuck outta here" in front of the students.  Coach Miller's body language was such that Ms. Stidwell felt that if she did not walk away, Coach Miller would do physical harm to her.

53.   No Employee Abuse Kit was completed for this incident as required.

54.   However, despite Plaintiff's requests that one be completed, Dr. Lett told Plaintiff that Ms. Stidwell should be able to resolve her own issues and that the matter would be handled "in house."

55.   Ms. Stidwell—who is fairly young—was so disturbed by the incident that her mother came to the school demanding to know what action would be taken against Coach Miller.

56.   Nonetheless, Dr. Lett refused to follow policy and complete the Employee Abuse Kit.

57.    On April 16, 2021, Plaintiff was issued a disciplinary action for his "professional and integrity."  However, the incidents mentioned in the disciplinary action were overblown and exaggerated.  In fact, the disciplinary action involved an incident that Coach Miller should have been disciplined for but was not.

58.    The true purpose of the disciplinary action was to retaliate against Plaintiff for raising concerns of student abuse by teachers and administrators.

59.    On April 23, 2021, Coach Miller wrote a statement to Dr. Lett, Mr. Bonds and Whitfield.  The statement described an incident where Layla Fears, Registrar Assistant, who is an extremely close friend of Dr. Lett and even lived with her, changed shoes in order to beat up a student who had gotten into a disagreement with her daughter.

60.    Coach Miller knew the gravity of the situation as he started off his statement by stating, "As a professional, this is the hardest statement I have ever had to write."

61.    Knowing the seriousness of the situation, Plaintiff conducted an investigation during which he took statements from Ms. Fears, from her daughter, and reviewed camera footage.  The camera footage revealed that Ms. Fears had changed shoes in order to physically do harm to a student.

62.    Despite Plaintiff aggressively requesting to Dr. Lett both verbally and in writing that an Employee Abuse Kit be completed—as required by school policy—and notify the student's parents that their daughter had been assaulted, Dr. Lett refused to follow school policy.

63.    Instead of taking action on Ms. Fears—who had changed her shoes in order to beat up a student—Dr. Lett requested that an investigation be conducted on Plaintiff regarding three social media posts, two Instagram posts and one Tik Tok post.

64.    The social media posts were part of Plaintiff's job responsibilities as Social Media Manager, were harmless pictures, and were no different than any of the other social media posts created by teachers and administrators on their social media pages representing a specific school department.

65.    Notably, the two Instagram posts were from February 2020, more than a year earlier.

66.    One of the Instagram posts—an Instagram selfie Plaintiff took his with his students—Plaintiff had obtained parental release forms for each of the students posted in the picture.

67.    As for the second Instagram post—a post where Plaintiff was compared to Arthur the cartoon character—that posting, which again was from over a year

earlier, had been initially posted by a student and then reposted to Plaintiff's Instagram account.

68.    Plaintiff showed that picture to the principal at the time, Principal Love, and she laughed and took no action.

69.    The only social media post that was recent was a Tik Tok video which the school district claimed was done on school time using school resources.

70.    However, the day Plaintiff recorded the video, the school was closed due to a COVID-19 outbreak.

71.    Several other teachers and administrators have posted similar pictures and videos and have not been terminated.

72.    Given that students now get most of their communications through social media, Plaintiff was encouraged to use social media to communicate with students, and two of the social media posts were from over a year earlier, it is clear that Dr. Lett was grasping at straws trying to justify a reason for Plaintiff's termination.

73.    The real reason Plaintiff was terminated was because of his complaints of student abuse, sexual harassment, and other unlawful and inappropriate conduct by teachers and administrators.

74.     On April 30, 2021, Plaintiff met with Dr. Lett and Ronnie Wade, Chief Talent Officer.  During that meeting, Mr. Wade very aggressively told Plaintiff that he must resign his employment within two (2) days or be terminated based on the social media posts.

75.     Given that Plaintiff would not be able to find subsequent employment if he was terminated, Plaintiff had no option but to resign his employment prior to termination.

76.     In May 2021, Plaintiff went on campus to pack up his office, Dr. Lett continued to tell Plaintiff that she did not know who made the complaint regarding his social media posts but that she would support him via references in a new job.

77.     However, Dr. Lett continued to retaliate against Plaintiff even after he was forced to resign by giving him negative employment references making it impossible for him to obtain a job in Georgia.

78.     Notably, the Georgia Professional Standards Commission's Ethics Division found that there was no probable cause to investigate Plaintiff based on the social media posts and submitted their findings to Defendant.

79.     In August 2021, Coach Miller got into a verbal altercation with a student, grabbed her by the collar, and pinned her up against the wall.  Miller got physical with her after she smacked his cell phone out of his hand.

80. Coach Miller was not suspended or terminated immediately after this incident.

81. Instead, Coach Miller was not suspended until six months later when the disturbing video footage of the incident was leaked to the public and picked up by news stations nationwide.

82. Plaintiff had—for several years—previously raised very troubling student abuse concerns about Coach Miller. However, nothing was done about the student abuse and required procedures were not followed.

83. Defendant Fulton County School District has a history of teacher and administrator abuse of students.

84. In fact, Defendant has recently been sued for abuse of students, *Williams v. Fulton County School District et al.*, No. 1:14-cv-00296-AM (N.D. Ga.) and for retaliation for reporting abuse of students, *Cox et al. v. Fulton County School District et al.*, No. 1:19-cv-04520-JPB-JSA (N.D. Ga.).

**COUNT I**
**RETALIATION UNDER THE**
**GEORGIA WHISTLEBLOWER PROTECTION ACT,**
**O.C.G.A. § 45-1-4 *et seq.***

85. Plaintiff incorporates by reference all preceding paragraphs of the Complaint.

86.     Pursuant to O.C.G.A. § 45-1-4, it is unlawful for a public employer to retaliate against a public employee "in the terms or conditions of employment for disclosing a violation of or noncompliance with a law, rule, or regulation to either a supervisor or government agency."

87.     Plaintiff disclosed violations of the law, rule, and regulation including Georgia state laws against assault and battery, O.C.G.A. § 16-5-20 and O.C.G.A. § 16-5-23, and against cruelty to children, O.C.G.A. § 16-5-70(b); Fulton County Schools Board Policy; and the Code of Ethics for Educators.

88.     Defendant forced Plaintiff to resign, or face termination, because of his protected activity of disclosing and objecting to violations of law, rule, and regulation.

89.     Moreover, Defendant has given Plaintiff negative job references making Plaintiff unable to secure other employment in Georgia.

90.     These adverse employment actions were in retaliation for Plaintiff's disclosing violations or noncompliance with laws, rules and regulations in violation of the Georgia Whistleblower Protection Act, O.C.G.A. § 45-1-4 *et seq*.

91.     Defendant's retaliation against Plaintiff for his protected activity caused him to incur damages, which include lost wages and benefits, emotional

distress, inconvenience, mental anguish, damage to reputation, and loss of enjoyment of life.

92.     Plaintiff is entitled to damages under the Georgia Whistleblower Protection Act against Defendant which would include front pay, compensation for lost wages and benefits, compensatory damages, attorney's fees and costs.

## COUNT II
## RETALIATION IN VIOLATION OF TITLE VII

93.     Plaintiff incorporates by reference all preceding paragraphs of the Complaint.

94.     Defendant is a covered employer under Title VII.

95.     Title VII prohibits covered employers from retaliating against employees for engaging in protected activity, which includes opposing sexual harassment in the workplace.

96.     While employed by Defendant, Plaintiff complained repeatedly to leadership regarding sexual harassment he experienced by Ms. Whitfield.

97.     Dr. Lett made it known to Plaintiff that she knew about his prior complaints of sexual harassment.

98.     Dr. Lett made it very clear to Plaintiff that she was not okay with Plaintiff's complaints and that she wanted to keep him quiet.

99.   Dr. Lett requested that an investigation be conducted on Plaintiff due to his social media posts because of his complaints of unlawful conduct, including sexual harassment.

100.   Defendant forced Plaintiff to resign, or face termination, because of his protected activity of disclosing and objecting to sexual harassment.

101.   Moreover, Defendant has given Plaintiff negative job references making Plaintiff unable to secure other employment in Georgia.

102.   Defendant's adverse employment actions were willful, wanton, malicious and in reckless disregard for Plaintiff's rights under Title VII.

103.   Defendant's adverse employment actions caused Plaintiff to incur damages, which include lost wages and benefits, emotional distress, inconvenience, mental anguish and loss of enjoyment of life.

104.   Plaintiff is entitled to damages against Defendant pursuant to Title VII which include front pay, compensation for lost wages, compensation for lost benefits, compensatory damages, and attorney's fees and costs.

**WHEREFORE,** the Plaintiff demands that a trial by jury be had on all Counts of his Complaint and that the following such judgment be entered on his behalf against Defendant granting the following relief:

(a) that Defendant be Ordered to make Plaintiff whole by providing for his out-of-pocket losses including any back pay in an amount equal to the sum of any wages, salary, employment benefits or other compensation denied or lost as a result of Defendant's unlawful and discriminatory acts, together with interest thereon, all in amounts to be determined at the trial;

(b) that front pay be awarded as the employment relationship has been so severely damaged that the relationship is unsalvageable;

(c) that compensatory damages be awarded against Defendant to compensate Plaintiff for his mental and emotional distress, anxiety, humiliation, outrage, and loss of professional and personal reputation as a consequence of Defendant's actions in an amount to be determined at the trial;

(d) that punitive damages be awarded against Defendant in an amount to be determined at trial to deter Defendant and others from similar misconduct in the future;

(e) that Plaintiff be granted attorney's fees and expenses of litigation pursuant to O.C.G.A. §§ 45-1-4(f) and 13-6-11;

(f) appropriate declaratory and injunctive relief;

(g) that pre-judgment and post-judgment interest be awarded; and

(h) that Plaintiff be granted such other and further additional relief as the jury

deems equitable and just.

Respectfully submitted, this 15th day of April, 2022.

s/ Jackie Lee
Jackie Lee
Georgia Bar No. 419196
jackie@leelawga.com
LEE LAW FIRM, LLC
1100 Peachtree Street NE, Suite 250
Atlanta, Georgia 30309
Telephone: (404) 301-8973

**COUNSEL FOR PLAINTIFF**